UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BLANDINA F., | ) | Case No. 2:21-cv-00140-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**INTRODUCTION**

On January 7, 2021, plaintiff Blandina F. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the issue in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issues for decision, whether the

1

Administrative Law Judge ("ALJ") erred in rejecting three physicians' opinions that plaintiff required a cane for ambulation.  Memorandum in Support of Complaint ("P. Mem.") at 4-10; *see* Defendant's Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-14.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred in failing to include plaintiff's need to use a cane for long distance ambulation in her RFC assessment.  The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 53 years old on the alleged disability onset date, has a sixth grade education.  AR at 59, 193.  Plaintiff has past relevant work as a sample supervisor.  AR at 53.

On February 26, 2019, plaintiff filed an application for DIB alleging she became disabled on February 28, 2018 due to suffering a left knee replacement, a torn meniscus in her right knee, extreme knee pain, back pain, and arthritis.  AR at 59.  The agency denied the application initially and on reconsideration.  AR at 85-88, 91-95.  On June 16, 2020, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ.  AR at 42-51.  The ALJ also heard testimony from Sugi Komarov, a vocational expert.  AR at 52-55.  On July 1, 2020 the ALJ issued a decision denying plaintiff's claim.  AR at 28-36.

Applying the well-known five-step sequential evaluation process, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of February 28, 2018 through the date last insured of March 31, 2019.  AR at 30.

At step two, the ALJ found plaintiff suffered from the severe impairments of degenerative joint disease of the bilateral knees and obesity. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. AR at 31.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that plaintiff had the RFC to perform light work with the limitations that in an eight-hour workday she can: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk four hours; and sit six hours. AR at 31. The ALJ precluded plaintiff from climbing ladders, ropes, or scaffolds, but found she can perform all other postural activities on a frequent basis. *Id.*

The ALJ found at step four that plaintiff was unable to perform her past relevant work as a sample supervisor. AR at 34.

At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, including office helper, ticket seller, and mail clerk. AR at 35-36. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. AR at 36.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied. AR at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

---

[1]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration ("SSA") must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

//
//

# IV.

## **DISCUSSION**

Plaintiff challenges the ALJ's determination that plaintiff does not require a cane for ambulation.  P. Mem. at 4-10.  Plaintiff argues the ALJ failed to adequately consider the medical opinions of two State agency physicians, Dr. S. Gitlin and Dr. H. Han, and the opinion of the consultative examining physician Dr. Daniela Drake, all of whom opined that plaintiff needed a cane to ambulate prolonged distances.  *Id*.  Plaintiff contends the ALJ's rejection of the physicians' opinions lacks the support of substantial evidence and constitutes legal error.  *Id*.

Among the evidence an ALJ relies on in an RFC assessment is medical evidence and opinions.  20 C.F.R. § 404.1545(a)(3).  For claims filed before March 27, 2017, the opinion of a treating physician was given more weight then an examining physician's opinion, which was given more weight than a reviewing physician's opinion.  *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  Under this previous hierarchy of medical opinions framework, the Ninth Circuit required an ALJ to provide clear and convincing reasons supported by substantial evidence to reject an uncontradicted opinion of a treating or examining physician, or specific and legitimate reasons supported by substantial evidence to reject a contradicted opinion of a treating or examining physician.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (as amended).

Under the revised regulations, for cases filed on or after March 27, 2017 such as this one, an ALJ will no longer defer or give specific evidentiary weight to any medical opinions.  20 C.F.R. § 404.1520c(a).

> For claims subject to the new regulations, the former hierarchy of medical opinions – in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant – no longer applies.  Now, an ALJ's decision, including the decision to discredit

5

1   any medical opinion, must simply be supported by substantial

2   evidence.

3   *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  As such, the previous

4   requirement that an ALJ provide "specific and legitimate" reasons to reject a

5   treating or examining physician's opinion "is clearly irreconcilable" with the new

6   regulations.  *Id.* at 790.

7          An ALJ now will consider the persuasiveness of the medical opinions and

8   findings based on five factors: (1) supportability; (2) consistency; (3) relationship

9   with the claimant; (4) specialization; and (5) other factors that tend to support or

10  contradict the medical opinion.  20 C.F.R. § 404.1520c(a), (c).  The most important

11  of these factors are supportability and consistency.  20 C.F.R. § 404.1520c(a),

12  (b)(2).  The ALJ "must 'articulate . . . how persuasive' [he or she] finds 'all of the

13  medical opinions' from each doctor or other source . . . and 'explain how [he or

14  she] considered the supportability and consistency factors' in reaching these

15  findings."  *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(b), (b)(2)).  The

16  ALJ may, but is not required to, explain how he or she considered the other three

17  factors.  20 C.F.R. § 404.1520c(b)(2).  But when two or more medical opinions

18  "about the same issue are both equally well-supported . . .  and consistent with the

19  record . . . but are not exactly the same," the ALJ is then required to explain how

20  "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were

21  considered.  20 C.F.R. § 404.1520c(b)(3).

22         With respect to supportability, the regulations state: "[t]he more relevant the

23  objective medical evidence and supporting explanations presented by a medical

24  source are to support his or her medical opinion(s) or prior administrative medical

25  finding(s), the more persuasive the medical opinions or prior administrative

26  medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  Regarding consistency,

27  the regulations state: "[t]he more consistent a medical opinion(s) or prior

28

6

1    administrative medical finding(s) is with the evidence from other medical sources

2    and nonmedical sources in the claim, the more persuasive the medical opinion(s) or

3    prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

4         Plaintiff here challenges the ALJ's reasons for rejecting the opinions of Drs.

5    Drake, Gitlan, and Han that plaintiff requires a cane for ambulating long distances.

6    P. Mem. at 7.  Specifically, the ALJ found plaintiff does not require a cane to

7    ambulate given the general success of physical therapy in improving her

8    symptoms, plaintiff's intact daily activities, and her reported occasional use of a

9    cane in the medical records.  AR at 33-34.

10        The use of a cane is a functional limitation only if it is medically required.

11   *See* Social Security Regulation ("SSR") 96-9p; *Quintero v. Colvin*, 2014 WL

12   4968269, at *10 (E.D. Cal. Sept. 29, 2014) ("The use of a cane or other 'hand-held

13   assistive device' is probative of a claimant's functional limitations only if it is

14   medically required.").  "To find that a hand-held assistive device is medically

15   required, there must be medical documentation establishing the need for a

16   hand-held assistive device to aid in walking or standing, and describing the

17   circumstances for which it is needed (i.e., whether all the time, periodically, or

18   only in certain situations; distance and terrain; and any other relevant

19   information)."  SSR 96-9p.

20        In the present case, substantial medical evidence exists in the record to

21   support plaintiff's need for a cane for long distance ambulation.  Plaintiff appears

22   to have started using a cane prior to her total knee replacement surgery in March

23   2018.  *See* AR at 329 (medical notes from February 2018 stating "patient is able to

24   ambulate using SPC [single point cane] on even/uneven surface and on 2 step by

25   front door.").  Plaintiff was also documented to be using a cane after the surgery in

26   March and April of 2018. AR at 299, 302, 304.  Dr. Drake, who examined and

27   reviewed plaintiff's records on April 18, 2019, observed that while plaintiff's

28

7

1   balance was normal, she had "mild to moderate left antalgic gait secondary to knee
2   pain," and was "healing poorly with decreased range of motion," and opined that
3   "[a] cane is needed for support for long distances."  AR at 412, 414.

4          On May 6, 2019, Dr. Gitlin, a State Agency physician, similarly opined that
5   "[a] cane should be used for ambulating prolonged distances."  AR at 65.  Dr.
6   Gitlin noted plaintiff had "abnormal gait, poorly healing TKR, decreased low back
7   ROM, swollen knee joint, pain, and impact of obesity on compromised joint.  AR
8   at 64.  Dr. Gitlin also noted that plaintiff "has been having problems with [her]
9   knee for a period over 12 months."  *Id*.  On August 12, 2019, Dr. Han, another
10  State Agency physician, opined that "[a] cane should be used for ambulating
11  prolonged distances."  AR at 76.  He explained that plaintiff was "healing poor,
12  still with swelling and decrease ROM, pain. May require 2nd left TKR."  *Id*.
13  Although some medical records indicate plaintiff was not always using a cane
14  when attending her medical appointments, such evidence is not inconsistent with
15  the need to use the cane for long distance ambulation.  *See e.g.* AR at 207, 887,
16  901.  Accordingly, substantial evidence supports plaintiff's need for a cane for
17  long distance ambulation.

18         The ALJ nonetheless rejected the physicians' opinions that plaintiff needed a
19  cane to ambulate long distances, and gave three reasons for doing so.  First, the
20  ALJ cited the success of physical therapy in improving plaintiff's symptoms.  AR
21  at 34.  The ALJ particularly noted that physical therapy resulted in improvements
22  in range of motion and pain.  AR at 32-33 (citing AR at 270, 275, 278, 283, 285-
23  88, 291).  But while the records reflect improvement as the ALJ noted, an
24  improvement in symptoms is not necessarily inconsistent with still needing a cane
25  over long distances, particularly give the other evidence in the record.

26         Second, the ALJ found plaintiff's daily activities show she does not require a
27  cane for ambulation.  AR at 34.  The ALJ particularly pointed to a March 2019

28

8

1    treatment note showing plaintiff was exercising for an hour at a time by riding an

2    exercise bike or swimming.  AR at 32 (citing AR at 271).  But that plaintiff is able

3    to swim and ride an exercise bike – activities that require no ambulation, and

4    indeed are often prescribed for individuals with knee problems – says nothing

5    about whether plaintiff requires a cane to ambulate.

6         Third, the ALJ noted the medical records reflect only occasional use of a

7    cane, and particularly cited a medical note from January 2020 in which plaintiff

8    reports using a cane "once in a while."  AR at 34, 903.  Defendant cites to other of

9    plaintiff's medical notes from January 2020.  *Id*. (citing AR at 903, 917, 930, 950,

10   999, 111).  In order for a claimant to be considered disabled, the severe impairment

11   must have lasted or be expected to last for a continuous period of at least 12

12   months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.909.  Substantial evidence

13   here supports that plaintiff's need for a cane and the underlying symptoms lasted

14   for a continuous period of at least 12 months from the disability onset date of

15   February 28, 2018, and notes from January 2020 that plaintiff only used a cane

16   once in while – a comment that could be consistent with use of a cane only when

17   ambulating over long distances – do not undermine that evidence.

18        In short, the reasons the ALJ cited for rejecting the physicians' opinions that

19   plaintiff required a cane to ambulate over long distances are not in fact

20   inconsistencies between the opinions and the evidence in the record.  Given that

21   the ALJ found plaintiff could stand or walk for four hours in a workday, and did

22   not include any requirement for use of a cane or other hand-held assistive device in

23   her RFC assessment, this was not a harmless error.  *See Carmickle v. Comm'r, Soc.*

24   *Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (an ALJ's error is harmless

25   where it is "inconsequential to the ultimate nondisability determination"); *see also*

26   *Oplinger v. Colvin*, 2015 WL 326809, at *6 (S.D. Ill. Jan. 23, 2015) (ALJ's failure

27   to address a claimant's need to use a cane may require remand).

28

# V.

# **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Typically, in accordance with the "ordinary remand rule," the reviewing court will remand to the Commissioner for additional investigation or explanation upon finding error by the ALJ. *Treichler v. Comm'r*, 775 F.3d 1090, 1099 (9th Cir. 2014). Nonetheless, it is appropriate for the court to exercise its discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to allow reconsideration of plaintiff's RFC before a determination can be reached as to whether plaintiff is disabled. On remand, the ALJ shall reconsider the physicians' opinions and either accept all of the opined

1  limitations or provide legally sufficient reasons supported by substantial evidence

2  for rejecting them.  The ALJ shall then reassess plaintiff's RFC and proceed

3  through steps four and five to determine what work, if any, plaintiff was capable of

4  performing.

**VI.**

**CONCLUSION**

7        IT IS THEREFORE ORDERED that Judgment shall be entered

8  REVERSING the decision of the Commissioner denying benefits, and

9  REMANDING the matter to the Commissioner for further administrative action

10  consistent with this decision.

12  DATED: September 28, 2022

_____
SHERI PYM
United States Magistrate Judge